Mr. Watson v. Tom McCaul. Good morning, Mr. Watson. As you know, the other side is on submission, so you'll be the only one arguing today. You have five minutes, and you may proceed when you're ready. Okay, I'm ready. I started getting arrested at about the age of 15 by the Manchester Police Department. They arrested me for walking to school. They said I said a swear word. I didn't. I was arrested for having a box cutter, and I worked in a factory cutting open boxes. I was arrested approximately ten different times for virtually nothing. When I was 18, the police questioned me about a series of robberies. Then they arrested me. Even after they learned I had nothing to do with the robberies, they arrested me. I ended up being sentenced to five years in prison. Years later, a guy tried to steal my car. I called the police several times. I called him maybe five different times. I told him that a guy was trying to steal my car. He was a friend of my brother's, or he knew my brother. The guy came to my house with a weapon. He got into a fight with my brother. He ended up losing his life at the end of the fight. The police came up with a story later, and they decided that I should be arrested. They made something up. They said that I smoked marijuana. That was the only thing that they could think to say. They charged me with possession of a non-quantity of marijuana. They held me, and they detained me for approximately a few days before I made a bond. Then after I made a bond, I hired an attorney. We went to court. They were trying to sentence me to prison for approximately a year. They couldn't find out how to put me in prison, so they talked the judge into sentencing me fraudulently. They talked the judge into putting me in prison. I was sentenced to three years in prison. It was complete fraud. I ended up getting documents that I have here. What they ended up saying, they ended up dismissing the marijuana charge, and the prosecutor was trying to get the judge to sentence me fraudulently. The judge said she didn't want to be involved. She ended up dismissing the marijuana charge. So the judge said she would sentence me without any charges. Because she didn't want to put fake charges on me. So she ended up dismissing the marijuana charge, and she sentenced me to prison with no charges. There was actually no charges at all. She sentenced me to three years in prison. Then what they later said is that I was on probation, which I was not. I ended up getting a letter in 2020 to show that I was not on probation at the time. They created a fraudulent document to say that I was on probation and that I violated probation and I pled guilty. I did not. This is a fake document. They already admit to everything. William Tong, I've already had correspondence with the state's attorney. They said that the whole thing was caused by the Manchester Police Department. They already acknowledged they were wrong. They said they were going to compensate me, but they said the only issue was that they felt I was asking for too much money. I asked for $5 million, and they said they felt I was asking for too much, and they said I should only ask for money for time I was actually incarcerated illegally. I was given two different figures. I spoke to the internal affairs officer at the Manchester Police Department. He stated that the three-year prison sentence was a problem because I was sentenced with no charges. There were no charges. I was not on probation, not on parole, and the only charge was the possession of marijuana, which there was none. That charge was dismissed. So it was such a problem that he said that they were willing to compensate me for the three-year prison sentence, but that's all they were willing to compensate me for. I filed a claim with the Claims Commission. They said they looked into my five-year prison sentence and three-year prison sentence. They said out of the five-year prison sentence, I only served two years in prison, so they were willing to compensate me for two years plus the three years, so they were willing to compensate me for five years, but they didn't feel I should be compensated for anything more than that for five years, but they've already all admitted that I was wrongfully incarcerated twice. I was arrested multiple times illegally and wrongfully, and the only issue was that they felt I was asking for too much money because I asked for $5 million. Mr. Watson, why didn't you bring the case sooner? I think you were pardoned in 2009. Right. Why didn't you bring the case sooner? Right. I was sentenced by a judge, and what they ended up putting down was that I was on probation and that I was in violation of the probation. When I spoke to the prosecutor, she said the sentence was such a problem that she said they brought all Connecticut state officials in on this, and she said to me, we're going to do everything we can to block you from doing anything. So I spoke to many attorneys and state officials, and I was told, if you can't prove that you were not on probation and that you violated probation, if you can't prove it, then you have no case. Can you prove it? And I said, well, they blocked me from having access to records. So if I can't have access to records, I can't prove I was or wasn't on probation. They won't give me anything. I actually have an e-mail here from Elisa Santiago, who worked for the probation department. I have it right here, and I asked her for copies of my probation records, and this would state whether or not I was on probation or not, and she says right here that at first she said that she would give it to me if I sent a copy of my driver's license, which I did, and then she said, unfortunately, they can't give me copies of any records. These are my records that I'm entitled to. She said they won't give me copies of any records. So if I can't prove I'm on probation, if I can't prove I didn't commit these crimes, how can I sue? I was actually told by the board of pardons and parole. They actually said to me, you have no idea how many people are incarcerated who are actually innocent, and if you can't prove what you're saying, then you have no suit. So what I did was I asked them, okay, well, the state law says when you're exonerated, then you have two years from that time to sue. That's what the state law said. When you're exonerated slash pardoned, you have two years. So I asked them, what constitutes an exoneration, because there's a difference between an exoneration and a pardon? They said to me, once a state official looks into your matter and they determine that it was someone else's fault other than your own fault, then you are officially exonerated. You have two years from that point to file a suit. So I filed the claims commission suit. This was in 2019 because I started to get documents. You see here I have a lot of documents that I've been collecting over the years. And I filed a claim in 2019. The state's attorney, William Tong, said he believed the manager of the police department is responsible for my incarceration. Not the prosecutors, not the judge. At that time, I was exonerated. He said it was not my fault. It was the fault of the manager of the police department. All right, I don't want to cut you off, but we obviously have your papers, too, and we appreciate you coming in and giving us the background to the case. Right. So we're going to reserve the decision. I appreciate you coming in. Thank you. You don't need any? No, we understand that you obtain these documents later on, so that's not a dispute. It's just whether or not the statute of limitations applies. So if we need those documents, we'll let you know. Okay? Okay. All right, thank you. All right, the last case being argued today is Thompson v. Steinberg. Good morning. All right, Mr. Steinberg, I see you reserved three minutes for rebuttal, and you can begin whenever you're ready. Your Honor, before we start, I want to point out I have two motions. Well, first of all, Mr. Proctor, when you came in late, we expect you to come in on time. It's not acceptable to say I'm on the bridge. Everybody budgets in sufficient time to get here at 10 a.m., so that's your first problem. Whatever motions you have, you can address when you get up there. It's Mr. Steinberg's time. Okay? Okay. Okay, go ahead. Thank you. Good morning. Excuse me. The appeal is a fairly narrow issue as to whether or not Mr. Paukman acted sufficiently to invoke the safe harbor under Rule 11. The district court ruled that a motion, a letter motion that Mr. Paukman filed that the court rejected and denied, explaining that it was incomplete, does not have a clear purpose, and does not seek relief from the court. The court ultimately ruled that because of that letter motion, it could, Mr. Paukman had invoked the safe harbor provision of Rule 11. What do you think the test for withdrawal should be? Well, I believe ultimately the question is, was it necessary to make this motion? Was it necessary to, was there still a case pending? Yeah, I think that really is the issue. I think you hit it right on the head. And first of all, it was mislabeled on ECF as a motion to consolidate. But as Judge Engelmeyer pointed out, when he ultimately denied the sanctions, the substance of the letter was unequivocal. This letter motion is to withdraw document number one without prejudice. So if this had been labeled properly, notice to voluntary dismiss on ECF, nothing else had to be done, right? It was just because it was mislabeled that Judge Engelmeyer didn't understand it that way at the time, right? Am I understanding the situation correctly? There was nothing else that needed to be done. They didn't need a stipulation. I know there were emails back and forth about a stipulation. There was no stipulation necessary. This certainly is an unequivocal statement. I want to withdraw without prejudice my case, right? Correct. And he pointed out, and you can correct me if I'm wrong, you say the judge terminated the motion. But if you look on ECF, it actually looks like the clerk of the court terminated the case on that date, potentially construing this as a voluntary dismissal, which doesn't need a judge's authorization. And the clerk's office actually terminated the case, and Judge Engelmeyer, I think his argument with Judge Engelmeyer, dismissed it again in denying the motions. But it was already gone on the court's docket. What's your response to that? Certainly neither the parties nor Judge Engelmeyer understood that the case had been dismissed as of that date. Yeah, but he kept telling you, well, there were two things going on, I think, in the emails back and forth. One is, I think it's the view that nothing else needed to be done. You had an email with him where you said we want with prejudice. Sure. And then there was this back and forth. I want discovery. I want settlement. But that's a whole different can of worms. If in fact, and I understand why you were concerned, you wanted some type of something more, which would be a dismissal with prejudice, certainly he was free to negotiate that with you, right? I was willing to do anything. I think my emails were fairly clear. Right. I was willing to do anything short of having to make a motion to the court. That wasn't him. First of all, he never did anything with the court. But I don't know if that's him going back on his dismissal without prejudice. I think his view was I've withdrawn that case. I don't need to do anything else. To the extent you want something more, which is a dismissal with prejudice, let's negotiate. Sure. So what's wrong with that? Again, this is a very narrow issue of whether or not I understand the whole history and the behavior. But on the issue of whether or not he somehow didn't do everything he could to, in the safe harbor period, withdraw the case, what more could he have done other than properly label it? Well, when the court denied the motion, and the court, that's what happened. The fact of the matter is- The court didn't say, I'm denying this, you didn't properly label this, put in something else. You can interpret the last line of the court's order on that date was, except in the event of new developments mirroring the court's intervention, the court does not see a cause for further correspondence in these matters. It almost seems like the court is suggesting that it's the same thing in the criminal case. This is over. There's nothing more to do here. So even though Judge Engelmeyer didn't say, and I dismiss the case, there's nothing in Judge Engelmeyer's order suggesting that Mr. Palkman has to do something else beyond what he did, right? I understand that that's why we're looking at it in hindsight. But at the time, certainly my understanding, my reading of the judge's order was that because the case could be withdrawn unilaterally by Mr. Palkman, there was nothing for the court to do. That's certainly the way I understood it. And if you read the emails that I wrote to Mr. Palkman, I essentially said that. The court's not going to do this for you. You have to do it yourself. Now, I understand there is the entry on the docket that you're referring to about when the case was marked. I guess the expression is terminated, which I'm not sure that's really the same as a dismissal. But it's also not a complaint. It's a very unusual docket. The termination of a miscellaneous case that was initiated by the filing of the letter. Correct. Which, so, I mean, I suppose that you could have sought striking of the letter or, but ultimately what you wanted was termination of the case. I wanted it dismissed. I wanted all of the allegations against me. I want it clear that none of that was there was any basis. On January 21st, the same day, 1253 p.m., you end the email saying, I am asking you to dismiss it with prejudice because I don't want this filed again and have to go through this another time. So my understanding is that, and then, again, he starts talking about reasonable settlement and getting discovery. So it seems like that's what you were looking for at that point, right? There is no question that my initial strategy was to see if I could get Mr. Palkman to agree to dismiss this with prejudice. Absolutely. When he wouldn't do that, however, and after the court issued its order terminating that motion, I backed off from that and I led Mr. Palkman to the point where he could file the notice of dismissal. And that would be without prejudice. I made it very clear that that's all he had to do. Is it possible you just misunderstood that the case was in fact terminated and over and you just didn't notice? It's very easy not to notice that on the top of the docket. I didn't notice it until yesterday. Exactly. None of us noticed it at the time. In fact, that argument has never been made until the motion that Mr. Palkman just filed. No one's argued that. Judge Engelmeyer didn't say it was withdrawn. Correct. Because the case is terminated. Correct. And Mr. Palkman never argued that at the time. He didn't argue it in his briefs to this court either. That's something that we've just become aware of. The other thing I wanted to just take a second to address, even if we would agree with you, Judge Engelmeyer still, it's in his discretion, even if this technically did not comply, he could still say it was an attempt and in my discretion I'm not going to impose the sanctions anywhere. Anyway, so isn't that really, either way, he views this as sufficient to avoid the sanctions whether or not, and that's within his discretion, right? I understand that thinking, that reasoning. But, but, I take his decision at face value, which is that the He made a legal decision, it wasn't, it was withdrawn. And he said he could not proceed. And by my view of this, when I received the decision, my reaction was, wait a second. He found that it was frivolous conduct I read it differently. I said if he hadn't tried to do this, then I would have sanctioned him for all these things, but I didn't I mean, I suppose he could have said whether or not it's withdrawn because of the efforts made to withdraw it that I misunderstood. I won't, in my discretion, impose sanctions. It's not what he said. What he said was it was withdrawn. If it hadn't been, I would have exercised my discretion. I would have the ability to impose sanctions and I would. I think the judge may have felt some responsibility for not having discerned from that letter motion what counsel was requesting. There were, there have been, my understanding is lots of letters from Mr. Paukman like that one. And I think the judge was frustrated with, with that. But, but my point is that what happened, happened. And it is ultimately the responsibility under Rule 11 for counsel to correct their frivolous conduct. And that didn't happen here. Notwithstanding all of the emails that I wrote and all of my effort to actually show Mr. Paukman exactly what needed to be filed for this to be finished. So that's why I felt that it was an appropriate appeal. Thank you. All right, Mr. Paukman, you're up. Hi, good morning. Okay, so yeah, I'd like to just point out that If you wish to, you can remove your mask while you're arguing. Huh? Exactly. If you wish to, you may remove your mask while you're arguing. You can't hear me with this? It's up to you. Oh, okay. I'll try and talk like this if you can't hear me. That's fine. Because I have like a sore throat. I don't want to get anyone sick. I'm not saying I have anything, but I don't want to. No, no. I just want you to know that you're free to. And plus, I think he has a sore throat. Okay. So, yeah, basically, I just want to point out a case. Retail Flooring Dealers v. Bellevue. I put that in. Well, first, I want to argue my motion to dismiss. The reason it should be, his appeal should be dismissed is because he's saying to me, you need to dismiss this with prejudice. I said, no, I can't do that. I'll dismiss it. He's like, no, no, with prejudice. So I wrote a letter to the court. I'm saying I want to dismiss this. Two days after I wrote the letter to the court asking to dismiss this, the clerk terminated the case. So the case was already terminated. And I understand the judge was very frustrated with me because of motions I made on the criminal docket. So he was more frustrated because of the motions on the criminal docket than anything I said about Daniel Steinberg. The reason we've had like this bad exchange with Daniel Steinberg is he filed a motion against me. Well, in that, I'm sorry, he filed an action against me. In that action, if you look, you will see that the signatures of defendant are actually, the signatures of one of the parties are actually judgment that are forging signatures of his mother. Then he filed a grievance complaint against me. How many years have you been an attorney? How many years have you been an attorney? 20. 20. Have you ever voluntarily dismissed a case before? I have a voluntarily dismissed a case? Yeah. It's pretty basic that we want to voluntarily dismiss the case. You put notice of voluntary dismissal. That's what it is. And you say, I voluntarily dismissed the case. Why didn't you do that here? That's what the whole cause of confusion was. There's a lot else going on here. But on the issue before us, that's what happened. You didn't call it a voluntary notice of dismissal. And therefore, it was not construed that way by at least Judge Engelmeyer. Okay, I'll explain to you what happened. Mr. Steinberg filed a motion for contempt against me in Kings County. So because he already filed a motion for contempt in Kings County, there was an order by Judge Pauly saying that from now on, any motions you make, you have to pay the $45 filing fee. So I didn't want to just file the motion on the criminal docket and then have this guy file another contempt of court motion. So that's why it was a little bit difficult for me because the judge already ruled on this motion on the criminal docket. And the only reason I was filing it was to pay $45, not to have another contempt motion against me. So, I mean, all I'm really trying to do is I'm trying to enforce a judgment for the past seven years. I haven't made any money. This guy's made hundreds of thousands of dollars because I actually have the checks. I'm just trying to make a living. I'm just trying to put some food in my stomach. You know, that's it. And the only reason I'm going after this guy, Aaron Bronstein, is because he owns half of Brooklyn. So he has attorneys, you know, paying them hundreds of thousands of dollars to attack me. But to make a long story short, I told Daniel, if you look at one of my motions, I said to him as far back as June 4th, 2020, you can disregard this because this motion was filed on the criminal docket. And because of Rule 11, because it says that I have a 21-day period, I filed a letter saying I want to withdraw the case. The clerk saw it and withdrew it three days later. He terminated the case three days after my motion. And that's it. Did you ever tell Mr. Steinberg that? I don't remember seeing the emails you were sending. This case has already been terminated. Look on the docket. I don't remember you saying that to him. There was no use to tell him that because he was- When you're going back and forth about what needs to be done, he's saying I need a stipulation. If you had noticed that at the time, you wouldn't say to him, what are you talking about? This case is over. Well, he should know the case is over because the motion's been decided on- You just didn't tell him that. You saw it at the time, but you didn't tell him that. Is that what you're telling us? No. You saw that it was terminated at the time, and you just decided not to tell him in all those emails, even though that was the whole topic? Well, first of all, the motion was decided December 20th. And he filed his Rule 11 letter two weeks later, three weeks later. So, no, that's not the case. The reason I didn't feel- Me and Mr. Steinberg was at a standpoint. He's not saying dismiss the case. He's saying dismiss it with prejudice. And I did say to him, I'm like, how can I dismiss a motion that's already been heard? There's no case law that allows me to dismiss a motion that's already been heard. There's none. Do you think it's appropriate for an attorney to keep filing the same motions over and over again or filing different lawsuits when there's already been a ruling? Huh? Do you think it's appropriate for you to have kept filing motions over and over again over the same thing, even when you lost, just arguing the same thing? Do you think that's something that an attorney ethically should be doing? Well, no, this is actually not the same motion. This was a motion that was filed in criminal court. And, Judge, it was just my insight at the time. If it was faulty, then it was faulty. But it was just a motion filed in criminal court. And it involved some parties where Judge Pauly- I put the decision on the docket. Judge Pauly said that you cannot file any more motions without paying the filing fee. And I just did it for Judge Pauly. That's it. I don't want to be accused of contempt of court. I even- in June 4th, I said to Mr. Steinberg, I said to him, you can disregard it. You want to dismiss it with prejudice? Dismiss it with prejudice. You want to seal the case? I'm not- I'm sorry. You want to dismiss it without prejudice? Let's dismiss it without prejudice. You want to seal the case? I'm not opposed. And that's it. Rule 11, it says you have 21 days to correct this, and that's what I did. I corrected it. It was corrected within three days the case was terminated. And even if it wasn't terminated, I looked. There's no case law which allows me to withdraw a motion that's already been heard. I mean, I would love such a case law. There's a few motions which I filed, even in other cases, which I wish I never filed, and I would love to withdraw them. But I can't. I mean, how is it possible for me to withdraw a motion after it's been heard? But that's basically what Daniel Steinberg wanted me to do. I don't think there are any questions. Do we have anything else to add? No. One other thing I want to add is I have a motion to dismiss because inside his appeal, he puts irrelevant documents that have to do with a Kings County case. We have your papers on that. Okay. All right. Thank you. That's it. And just one last thing. I just want to point out, it's not that I was filing a lot of cases. It's that I was going to different areas and trying to enforce a $20 million judgment. So it's not actual cases that I've been filing. Thank you. Mr. Steinberg. You have three minutes. Thank you. Just a couple of brief comments. First of all, Mr. Palkman did not appeal from the district court's decision. So for that reason alone, we ought not to be engaging in a discussion of whether or not his conduct was frivolous. That part of the decision has not been appealed from. But it pains me to correct a couple of things. With respect to the $45 fee argument that Mr. Palkman raises, Judge Pauley's decision appears at page 119 of the appendix. It was a case that Mr. Palkman brought against Aaron Braunstein and others, and the judge expressed some concerns about that proceeding that was brought. But to the extent that that decision can be read, as Mr. Palkman suggests, and I don't think it can, Mr. Palkman proceeded to file this case against me and another attorney. So we made the affirmative step of adding two attorneys as defendants. He didn't need to do that if his $45 fee argument was valid. So I just think that that's an invention at this point. With respect to the statement that was made about contempt, Mr. Palkman is connecting, improperly connecting, a case in state court that he brought called Madigan v. Berkeley Capital. That's of record at 205 AD 3rd 900. That's the decision that holds Mr. Palkman in criminal contempt. It has nothing to do with Judge Pauley's decision. The two are completely unrelated. It was brought, that case, the contempt motion was brought on behalf of my client, Oceana Holding Company. So again, it's unrelated and the argument doesn't follow. Last, and I've touched on this already, but the arguments that are being made about the case having been dismissed, neither Mr. Palkman nor I nor Judge Pauley understood at the time that these motions were made that the case had been dismissed. We all understood that it had not been dismissed. If I had to speculate as to how the clerk of the court actually came to mark it as having been terminated, it perhaps has to do with an order that was entered in the criminal court case, which I have looked at now to try and understand this. And that order indicates clearly that the criminal case. Daniel Meyer looks back at it now and says that, I missed it at the time. I don't understand it at the time. I'm sure maybe it was because it wasn't properly labeled, which is understandable. But looking at it now, that was a voluntary withdrawal of this case. Why is that? And he actually said in the opinion, had Palkman not essentially contemporaneously mooted the sanctions issue by asking that the case be dismissed, sanctions would have been clearly warranted. So he went back, he looked at it and said, yeah, I didn't notice at the time. And obviously you didn't notice at the time, but it looks like the clerk's office did. And with hindsight, Judge Engelmeyer said that was an attempt to dismiss. Judge Engelmeyer doesn't say anywhere in his decision that the clerk understood it to be that. He looked at it and said, looking at it now, that's what he was trying to do. There's no question that the judge realized after the fact that that's what Mr. Palkman was trying to do. Agreed. He wants to tell Judge Engelmeyer, you're wrong, that's not what Mr. Palkman was trying to do. You're wrong, Judge Engelmeyer. We looked at it, that's not what he was trying to do. That's what we would be saying, right? No, no, no, no. What are we saying? Your point is about the conduct after Judge Engelmeyer acted on the original motion. The judge did what he did. Yeah. And the judge didn't realize it at the time that that's what Mr. Palkman was asking for. So then the question is, who's the burden? Who's got the burden to do something about it? Is it the court to fix it? Well, okay, the court made a mistake. But that doesn't mean that it takes the burden off counsel to correct what they did. And that's what Mr. Palkman argued. Mr. Palkman argued that, ah, the court decided my letter motion the way it did, so I don't have to withdraw the case. That's not right. The result should be Mr. Palkman should have filed the notice of dismissal, which I showed to him exactly what he had to do. Then I wouldn't have had to make the motion. That's my point. My point is that if you want to invoke the safe harbor, the burden is on counsel to do what's necessary to invoke the safe harbor. All the cases that we have all talk about the safe harbor, the action not happening in time.  That was clear. Unless I made the motion, the case wouldn't have been dismissed. Except that it did, at least. Except that it turns out it did. In hindsight, we... Nothing else additional being filed, right? In hindsight, yes. But that's not... Judge Engelmeyer, in his order, in response to the motion, dismisses the case. He understood. None of us understood that the... And I keep looking back for the word... Determination of the case, which I think, as I say, I think it reflects an order in the criminal court case where Judge Engelmeyer wrote that that case is still closed. I perhaps think that that's what's the genesis for this. But I'm speculating. I don't know. All right. Thank you. Thank you so much. We'll reserve decisions. Have a good day. Thank you. No, we're done. The last case is on submission. As I noted, Kingsby City of New York. That completes the business of the court. And with thanks to Ms. Beard, I ask that she leave the court. Court is adjourned. Court is adjourned.